The next case this morning is 525-0396, People v. Bowman. Arguing for the appellant is Benjamin Wimmer. Arguing for the appellee is Stephanie Lee. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Morning, counsel. Good morning. We're looking forward to your arguments. We've read your argument. You may do so. Thank you. May it please the court. Benjamin Wimmer of the State Appellate Defender's Office on behalf of the defendant, Maverick Bowman. This court should reverse Mr. Bowman's conviction for drug-induced homicide and remand for a new trial because the trial court plainly erred in failing to issue the standard pattern instruction on causation in homicide cases. Madeline Day, a four-year-old severely disabled child, effectively paralyzed, was killed by a massive overdose of cocaine, almost certainly murdered. There were only two people that could have fed the cocaine to her, her mother, Taylor West, and West's live-in boyfriend and cocaine dealer, Maverick Bowman. The jury's verdict in this case strongly suggests that it believed West murdered Madeline and that Bowman did not see it coming. The jury received charges of murder, involuntary manslaughter, and drug-induced homicide. It acquitted Bowman of murder, suggesting it believed he did not intentionally kill Madeline. It acquitted him of involuntary manslaughter, suggesting it believed he did not recklessly kill Madeline. It convicted him of drug-induced homicide, but in order to do that on the instructions it was given, the jury did not have to find that Bowman killed Madeline at all. Bowman was the undisputed source of all cocaine in the family's apartment, and the jury was not instructed that for a conviction it had to find that Bowman's act of delivering cocaine to either Madeline or West caused Madeline's death. This was error. Under Illinois law, a defendant is guilty of drug-induced homicide only if their act of delivering cocaine to a person proximately causes the victim's death. Deliberate murder of the victim by a third party can constitute a supervening cause, unconnected with the defendant, that breaks the proximate causal chain between the defendant's act and the result. The jury should have received pattern instruction 7.15, which conveys these principles, and it is likely that the omission of the instruction caused Bowman's conviction. That is plain error. This court should reverse and remand for a new trial. Now under Illinois law, drug-induced homicide requires that a defendant's act proximately causes the victim's death. The ordinary meaning of the term homicide is to cause the death of a human being, and the statute names the offense drug-induced homicide. In addition, the General Assembly specified that the statute should be codified in Article 9 of the Illinois Criminal Code, which lists homicide offenses. Following this, the Illinois courts have held that standard homicide causation requirements apply to drug-induced homicide. As the Illinois Supreme Court said in People v. Naray, that means both cause in fact and proximate cause. As more specifically stated by the Second District of the Appellate Court in People v. Bohand, that means that the defendant's act of delivering a drug must proximately cause the victim's death. To quote them, the drug-induced homicide statute is satisfied by showing that the death was proximately caused by the delivery of the controlled substance. Now broadly speaking, what proximate cause requires is that not only that there be a physical connection, a physical process connecting the defendant's act and the result, in this case the death of a person, but that that process be sufficiently foreseeable or more broadly within the ordinary course of events, such that it's fair to hold a defendant responsible for that process. Now intuitively, a pleasure drug user using a pleasure drug as a murder weapon is a bit unusual. The sort of prototypical ways in which a drug-induced homicide would occur would be a person delivers a drug either to a user or to another dealer. At any rate, the drug eventually winds up in the hands of a drug user who then either misjudges their dosage and overdoses or has some sort of pre-existing medical condition, whether or not caused by other drug use, that the drug then exacerbates, leading to death. Intuitively, one could imagine that a reasonable jury could conclude that it's outside of the normal course of events to deliver a pleasure drug to a consistent pleasure drug user that the user then uses to murder their child. And that's consistent more broadly with Illinois case law, which has held that intentional killing of a person by a third party can constitute a supervening cause. That said, the jury found that the defendant acted with the mother and was a contributing cause in feeding this cocaine to the victim. Wouldn't that be sufficient to support the instruction and make this instruction proper? Because in the spring verdict case of Peeble v. Near, the contributing cause standard does apply in drug-induced homicide cases. Yes, the contributing cause standard, though, addresses cause in fact. What was specifically before the issue, the court in Peeble v. Near, was whether or not it was sufficient that it was required for the cause to be a sufficient cause or but for cause of the death. There was no question of an action by a third party there to cause the death. The issue was whether or not the defendant would have died even if they hadn't taken the drug. Proximate cause is different than that. Even if the defendant's act are a contributing cause of the victim's death, that doesn't necessarily mean it's also a proximate cause of it. A good example of that is a case cited in the briefs, Peeble v. Nelson from the First District Appellate Court. In that case, that was a bench trial, but there was a significant discussion of how the jury instructions would interact with, convey the approximate cause requirement to the jury. That was a case in which the defendant had greatly injured a child, again, just kind of a similar pattern, greatly injured a child by shaking them when they were a baby. Years later, when the baby is now suffering from cerebral palsy, it's supposed to be left on its back in bed when it goes to sleep, but they find in the morning it's face down. Given the testimony, there's no way it could have wound up face down unless the mother, who was the only one caring for at that time, had at very least been grossly negligent or probably actually killed the kid. In that case, the Illinois Supreme, First District Court rather, states that the state needs to prove two things. One, that the defendant's actions are a contributing cause of death. Second, that the defendant's acts, to follow the language of the Parent Instruction 7.15, that the death did not result from a cause unconnected with the defendant. That's what conveys the approximate cause requirement. In this case, we have a similar sort of situation. The defense theory is basically that West kills Madeline without Bowman's agreement or really anticipation. If he had anticipated it, that would be reason to return a guilty verdict of involuntary manslaughter, which they acquitted him of. Under the evidence before the court, it was clear and obvious error not to issue Instruction 7.15. This was the entire defense theory. In addition to this, we need to show the evidence is closely balanced. As I've already said during my opening, the jury's verdict strongly suggests, in fact, that the evidence was closely balanced, given that they acquitted him on the other two charges and weren't instructed on a causation requirement. It makes sense that the jury would reach that conclusion on the evidence before it. The evidence was that Madeline had suffered an unexplained and nearly fatal incident at age one when she ingested a drug. Later, at age four, she dies after ingesting a drug. The only person involved in her care at both of these times is West. A jury could very easily conclude there's more here than that. She's just a bad luck magnet. We agree, counsel, though, that the jury instruction should have been presented by defense counsel, correct? Your suggestion is not that the trial court should have presented that. It is. That's our argument. It's plain error not to issue the instruction. But the case law is clear, though, that the trial court is not responsible for presenting jury instructions. That's on the parties. You would agree with that? Yes, just as it's on the parties to make objections to any sort of improper procedure. When they don't do it, the error is forfeited. But you can still review for plain error. And you're claiming first prong and second prong plain error, is that correct? Just second prong. Just closely balanced evidence. Thank you, Your Honor. All right. Thank you. Do you want to conclude, Mr. Wimmer? For the foregoing reasons, the evidence in this case was closely balanced, and this court should reverse and remand for a new trial at which the jury will receive causation instructions. Thank you. How do you answer, though, the... I think the state makes the argument that if 7.15 had been given, that actually strengthens the case for the state because it includes the contributing clause standard and excludes unconnected with the defendant. Well, that actually helps here because without this instruction, we don't have... The jury doesn't get told that even if the defendant is a contributing cause, the defendant is still not guilty if the death results from a cause unconnected with the defendant. This is what the First District stressed in People v. Nelson. These are separate requirements in this instruction that the state has to prove. Contributing cause and not caused by a cause unconnected with the defendant. Cause, in fact, proximate cause. Without the instruction, the jury doesn't receive any proximate clause instruction. All right. Thank you. Other questions, Justice Schiller? No. No questions. Thank you. Justice Bolinger? No questions. Thank you. All right. Thank you. Appreciate your argument. You'll be given an opportunity for rebuttal momentarily. Counsel for Appolini for the state. You're ready to proceed. Good morning, Your Honors. And may it please the court, Stephanie Lee for the People. In this case, the case law, the statute itself, the instructions, and the committee comments all support the People's position. You will notice that defense is not arguing ineffective assistance of counsel for not raising this or asking for this instruction. What is being confused here, which is very much like if you look at the Kidd case at, I believe it's 33 to 34, when they talk about the defense confusing foreseeability with with proximate cause. The difference between the intentional murder and even the involuntary manslaughter and this drug-induced homicide case statute is that in the drug-induced homicide situation, it is actually the drugs that have been knowingly delivered that now cause the death. It doesn't matter who feeds them to the actual victim. And there are cases where the defendant who delivered the drugs is not even anywhere near the scene of the ingestion when they get ingested. So all three of the cases, which are the main cases that have been cited, which is Boned, Kidd, and Near, all of those had to do with multiple substances being found in the deceased. Here, we have one substance. We have a lethal dose of cocaine in this child. And if you look at Kidd, when they talk about, oh, well, maybe it was a suicide, maybe it wasn't foreseeable. It never, ever said that a suicide would have been a de facto intervening, unconnected cause. The fact of the matter is in these drug-induced homicide cases, what you have to knowingly do is deliver these toxic substances to another. And then any person has to ingest them, inhale them. It could be injected. It could be many different ways. And then they die from that, from the cause. So the jury actually was instructed as to cause. The two IPIs that are clearly required are 727 and 728, and both of those require causation. 715, actually nothing in the committee comments. What you're asking is for a trial judge to sue Svante, find that this had to have been given under the facts of this case. And there are the other cases that talk about it was an error to give 715. Number one, actually, in all those cases, the defense was objecting to 715, probably because it doesn't usually help a defendant in a drug-induced homicide case here like this. But in one of them, they wanted a foreseeability instruction, and it was properly not given. I think it was the kid case where they talked about the delivery, whether they should have been instructed as to the delivery. Because in that case, it wasn't clear. It was a dispute among the experts of which drug had actually caused the death. So the deceased had cocaine, morphine, Xanax, and cannabis all in his system. And the only one that the defendant was charged with was the cocaine. So it had to be, excuse me, and the expert for the defense said, well, we think most of that was metabolized, and that's not what caused the death. In Bone, the defendant wanted, well, in Bone, they made it clear that the person could be a proximate cause and not be the only proximate cause. So there can be more than one proximate cause. In that case, the defendant had only delivered methadone, and the person died of both methadone and cocaine. In Near, what they talked about is that 7-15 is a much broader definition than some of the federal cases. It actually talks about not being a but-for causation. Nothing in Near says it would have been a clear and obvious error not to give the instruction. All it said was it was not error to give it. And again, in that case, the defense wanted a, some sort of a non, I think he wanted a non-conforming API or non-API instruction, as my recollection in that case as well. But the key in Near was that he was charged only with the heroin delivery. He had actually delivered both cocaine and heroin in that case, was only charged with one, and so it mattered which one caused the death. It doesn't matter who fed the, or who actually physically fed it. Many of these cases, they were not even anywhere near the scene when the death occurred. And so, you do not have to be there to be physically giving it. You could give it to another, and then any person ingests it, and it causes that death. The idea that this is a pleasure drug, which is illegal, and in lethal doses to even kill an adult, the defendant was the sole person who had the control over this cocaine in this case, and it's undisputed that that was the cause of this child's death. He did not need to feed it to her. The people's position is that there was definitely evidence that that is what occurred. The jury found that we didn't prove beyond a reasonable doubt that he murdered her or committed involuntary manslaughter. That does not preclude the idea that he actually committed this drug-induced homicide, which is exactly what they convicted him of. Foreseeability, again, is not a specific requirement, and so what he needed to do, the drugs that he delivered knowingly, that's where your mental state comes in, had to cause this death. The jury was instructed that they had to find that it caused the death, the drug caused the death. That is exactly what they found. If I could have a moment. So, again, the plain language of the statute, which is very clear, is that the defendant needed to knowingly deliver this toxic control substance, which he did, nobody disputes, to another person, and any person who ingests that, that causes the death of the victim, the ingestion, the inhalation. That's the causation. For the trial judge to have to sui sponte, give an instruction that no case actually says is mandated, it's not only not error, but it's certainly not clear and obvious first prong plain error. And when you get to the first- Counsel, do you believe the giving of 715 would have made the state's case stronger or had no impact? Actually, I believe it would have 100% made the state's case stronger. The reason why is because the last sentence, which the defense tends to overlook, is that it doesn't need to be the sole or immediate cause of the death. And again, what has to be the cause here is the ingestion or inhalation of that drug. Nothing requires that it be the defendant that actually put that drug into her system, though we do think there was some evidence that it could have easily been the case that he did, especially all of his conduct afterwards and cleaning up all of her things, getting rid of all the evidence, telling him to put her in the shower instead of calling 911. Notably in Kidd, they also did try that method of putting the person in the shower as well to try to revive them. And essentially, there is nothing in the committee comments, the case law, or the statute itself, or the instructions that would have mandated the giving of this. If it had been given, could somebody argue maybe that wasn't an abuse of discretion? Maybe. That's not the issue here. And again, there's no argument of ineffective assistance of counsel. For all of those reasons, we do ask that this court affirm the verdict below. Thank you. Thank you. Questions? Justice Schiller? No questions. Thank you. Justice Bollinger? Thank you. All right. Thank you. Counsel for the appellant, you have time for rebuttal. All right. Three quick points, your honors. First, opposing counsel repeatedly notes that we didn't raise a claim of ineffective assistance of counsel. I'm not convinced that counsel wasn't ineffective. I just don't think that we can effectively present a claim without some sort of fact finding by the trial court about precisely what counsel's strategy was first. That's why we're running on plain error alone. Secondly, opposing counsel argues both that the statute simply doesn't require that there be approximate causal connection between defendant's acts and the death, and that regardless, it's not required to instruct the jury about it, even if it is. On the first point, the second district in People v. Boan did specifically hold that approximate causal connection between the defendant's own act and the death was necessary for the statute, and it relied on that to reject the defendant's argument that the statute was unconstitutionally vague. It specifically adopted the state's argument regarding what the statute required in that case. So if this court is going to rule that the statute does not require approximate causal connection between the defendant's act and the death, it will be setting up a split with the second district in Boan. On the second point, the final point, basically, that the state argument that the jury doesn't need to be instructed about this, it is a basic rule of, you know, law in Illinois, that the jury has to be, receive instructions that fully and fairly set forth the law as applicable to the case. The only law in existence, case law in existence, states that this is a requirement of the statute, and that when a defendant, such as in People v. Boan, suggests that another person deliberately killed the victim, in the case of Boan, victim herself, the defense was that the defendant, the victim had been suicidal, which she had been prior to it, and had deliberately overdosed on methadone that the defendant supplied her with. When that is the defense, instruction 7.15 adequately and accurately sets forth the law. State cites numerous cases where defendants asked for special instructions that were rejected. In each case, because rule 4.15 says that when a pattern instruction, you know, adequately sets forth the law, you don't use a non-pattern instruction. Because of that, it is clear when a defendant has a defense like this, that somebody else killed the killed the victim, rather, you use a pattern instruction 7.15. Finally, we are not asking for a rule here that the killing of the victim by a third party is like, as Blackletter law must always be, an intervening or supervening cause that cuts the approximate causal chain between the defendant and the death. In none of the cases we've cited did any court suggest that was the case. They say it's that the approximate cause issue in these cases is something for the jury that they have to consider in light of all the evidence before it, including potentially, you know, all the evidence regarding the circumstances of the Defendant's Act and what was going on with the victim. So we aren't saying that, you know, there's an automatic, you know, we aren't asking for his conviction to be reversed outright. We aren't claiming that the evidence wasn't sufficient to warrant a trial. What we are saying is that it's a question for the jury and it's a question the jury did not resolve and it's a question that, given the jury's verdicts, they are likely to conclude, they likely would have concluded the other way on if they had been instructed. In light of that, that is first pronged plain error and this court should reverse and remand for a new trial. Unless this court has any further questions? I just understood you say that that is first pronged plain error, but I thought you answered Justice Schiller's question earlier that you were seeking second pronged plain error. I sometimes mix up which prong is which. We're arguing closely balanced evidence. All right. First pronged. Right. Thank you. Other questions, Justice Schiller? No questions. Justice Bollinger? No, thank you. All right. We appreciate your arguments. We'll take those into consideration along with the briefs you've already filed. We'll take the matter under advisement, issue a decision in due course.